**Everett MCPIKE, Plaintiff,**

v.

**CORGHI S.P.A., C.A. McCourt & Associates, Inc., Heafner Tire Company, John Doe II—Unknown Tortfeasor, and Resource Banc Shares Corporation, Defendants.**

**No. LR–C–98–32.**

United States District Court, E.D. Arkansas, Western Division.

Dec. 15, 1999.

Paul E. Harrison, McMath, Vehik, Drummond & Harrison, P.A., Little Rock, AR, Thomas L. Barron, Attorney at Law, Little Rock, AR, for Everett McPike, plaintiff.

Elton A. Rieves, IV, Rieves & Mayton, West Memphis, AR, for Corghi SPA, C.A. McCourt & Associates, Inc., defendants.

John S. Cherry, Jr., Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR, for J.H. Heafner Company, Inc., defendant.

## SUBSTITUTED MEMORANDUM AND ORDER[1]

STEPHEN M. REASONER, District Judge.

This action involves a tire explosion. Plaintiff was an experienced tire shop operator for six years at the time of the accident. In January 1995, he purchased a Corghi table top tire-changer because his old changer damaged "high dollar wheels." On August 8, 1995, plaintiff was inflating a used tire brought in by an unknown customer. Plaintiff claims the last time he checked, the air reading was 30 pounds per square inch ("PSI"). When he put his foot on the pedal to increase inflation of the tire, the tire flew into the air and hit him, causing extensive injuries. At some later time, the unknown customer went to the shop and retrieved his tire and wheel. Neither the customer nor the tire or the wheel have been located and probably will not be prior to the trial of this action.

Plaintiff and his expert, Dr. Alan Milner ("Milner"), claim the machine had a design defect in that the solid table top acted as a "launch pad" when the tire and rim separated. Milner states the machine is defective in four respects: (1) the machine has a method of supporting the tire/wheel assembly in its operating position which represents an efficient launch pad; (2) the machine has no significant means of restraining the tire/wheel assembly on the table top, which is also known as the platform; (3) the inflation control pedal is improperly positioned; and (4) the rotary turn table design obscures the tire under-bead and prevents a service person from determining whether the under-bead is seated prior to completion of the inflation process. In Milner's opinion, the "center of the problem" is the alleged "launch pad" effect of the machine. In fact, Milner avers that if this defect was not present plaintiff's injuries would have been almost completely eliminated.

In *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293 (8th Cir.1996), *cert. denied,* 520 U.S. 1196, 117 S.Ct. 1552 (1997), the Eighth Circuit affirmed the district court's decision to exclude the testimony of Milner in a table top tire-changer machine case alleging design defect. By his own admission, Milner has not qualified as an expert in a federal court proceeding in a tire-changer case since his disqualification in

---

1. On November 10, 1999, the Court telephonically advised the attorneys in this case of the Court's ruling on defendants' motion to exclude testimony of expert witness. The closeness of trial did not allow time for a formal written memorandum and order at that time. However, as the court found the record in this case to be significantly different from that presented in *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293 (8th Cir.1996) *cert. denied,* 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997), so much so that a different result was required, the Court feels that the reasons for its decision should be fully stated and in writing. Hence this Substituted Memorandum and Order.

*Peitzmeier.* Plaintiff and Milner attempt to distinguish the *Peitzmeier* case arguing that the entire district court's opinion was based on a fact situation which was totally false due to the failure of the plaintiff in that case to adequately develop the record.

The Supreme Court stated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) that the trial judge must act as a gatekeeper and determine whether expert testimony is relevant and reliable. In considering the relevancy prong of this two-part test, the trial judge must examine the "fit" between the expert testimony and the facts of the case; whether there is a valid scientific connection to the pertinent inquiry. Such a connection is a pre-condition to the admissibility of the testimony.

In determining whether the testimony is reliable (the second prong of the *Daubert* test) the court must access whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.,* 113 S.Ct. at 2796. To aid a trial court in determining whether an expert should testify based on scientific knowledge, the court offered four non-exclusive factors: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) in the case of a particular scientific technique, the known or potential rate of error; and (4) whether the theory or technique has been generally accepted. *Id.* at 2796–97.

Subsequently, the Supreme Court has shed further light on the parameters of *Daubert.* In *General Electric Company v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the Supreme Court held that the abuse of discretion standard—ordinarily applicable to review of evidentiary rulings—is the proper standard by which to review a district court's decision to admit or exclude expert scientific evidence. Additionally, in *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court held that the *Daubert* factors may apply to the testimo-

ny of engineers and other experts who are not scientists holding that the *Daubert* "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony. The Court stated that

the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert,* nor can we now do so on subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.

The Court in *Kumho Tire* noted that the list of factors was meant to be helpful, not definitive.

In applying the *Daubert* analysis in the *Peitzmeier* case, the Eighth Circuit outlined eight factors that supported the district court's decision to exclude Milner's testimony. First, it was noted that "Milner concedes that he has neither designed nor tested for safety or utility any of the proposed safety devices that he claims are missing from the Hennessy tire-changing machine." *Peitzmeier* at 297. Second, his only "demonstration of an alternative design is a series of rough sketches that have not been adapted into engineering drawings, much less prototypes." *Id.* Third, there was "no factual basis to support an opinion that his design changes are feasible" or fourth, that they "would not hinder the efficacy of Hennessy's present tire-changing model." *Id.* Fifth, the Eighth Circuit cites that "Milner admits ... that he has never designed, built, or tested a platform that has been shown to reduce the launch effect of an exploding tire and wheel assembly while adequately supporting the tire and wheel assembly during the tire-changing process." *Id.* Relying on all of these factors, the Eighth Circuit found that "Milner's proffered testimony does

not satisfy the first *Daubert* factor," whether Milner's theories or techniques have been tested. *Id.*

In considering whether the theory or technique has been subjected to peer review, the Eighth Circuit found, as its sixth factor, that "not one of Milner's proposed changes to the tire-changing machine has been subjected to peer review." *Id.* The Court rejected the suggestion that "cross-examination at trial and the number of Milner's court appearances in design-defect cases can take the place of scientific peer review." *Id.* Lastly, the Court considered the final *Daubert* factors of the known or potential rate of error and the general acceptance in the scientific community of the proffered theories. As its seventh reason for rejecting the testimony, the Court found that "because Milner has not conducted any experiments or testing of any kind, there cannot be a known rate of error for his results." *Id.* at 298. For its eighth and final reason, it was noted that the Peitzmeiers offer "no testimony regarding the general acceptance of either Milner's theory or his methodology." *Id.*

This Court notes initially that the record in *Peitzmeier* is far different from the record developed in this action. As plaintiff here noted, the plaintiff in *Peitzmeier* did not even attempt to develop the basis for Milner's opinion. In fact, Milner himself concedes that on the state of the record in *Peitzmeier*, he would agree with the district court's decision and the Eighth Circuit's affirmance.[2] The district court noted that the plaintiffs in *Peitzmeier* did not offer any evidence that any manufacturer had offered a tire-changing machine with Milner's suggested safety features to the consumer at the time the one in question was manufactured. Here, the record reveals that, at the time of the sale of the machine to plaintiff, tire-changing machines incorporating Milner's proposed changes, had been manufactured and placed on the market. The fact that machines including Milner's proposed changes have been manufactured and are in service negates the criticism based on

2. Dr. Milner testified at the hearing as follows:

BY MR. McMATH:

Q. Dr. Milner, with regard to the *Peitzmeier* case, would you tell the Court how the deposition was taken that was taken of you in that case?

A. It's my recollection, sir, the deposition was taken. Nothing substantive was established. It was to be continued, and it was not continued. The Court was evidently informed that there was none of this information which I had given in previous depositions to these same defendants, so the defendants knew about all the things that I have explained to you today, that they knew about that when they made these representations to the Court that there had been no testing of these things. They knew that they had tested. Their own company had tested them in 1966, which I've described here today. They knew that they had done those tests in response to the ones that I had done, earlier the ones where they displaced the platform underneath to test the principle, that they had done that. They had evidently not told the court that.

Q. Well, they knew you had done tests.

A. And they knew that I had done tests.

THE COURT: You were not asked about that in your deposition?

THE WITNESS: I don't recall being, no.

BY MR. McMATH:

Q. Dr. Milner, they asked you a series of questions like "Have you ever designed tire mountings"?

A. Yes.

Q. "Have you ever worked for a tire mounting machine manufacturer?"

A. *Of course, the answer to all those questions were designed to be no, and they were no.*

THE COURT: I understand.

BY MR. McMATH:

Q. And then they present this motion to the Court. The next thing you hear, you've been thrown out?

A. I've been thrown out, and I look at the opinion. I look at that opinion. *And if that were the facts of the matter, I would have to agree with the opinion.*

Q. At that point did you urge the plaintiff's lawyer in that case to obtain somewhat more sophisticated counsel?

A. Yeah, I did. By that time it was too late. I don't want to be critical of the counsel, because I'm not a lawyer.

(Emphasis added).

894

the lack of testing, lack of a prototype, design development and the like. Unlike the record in *Peitzmeier*, the record here reveals that Milner's analysis is not merely some untested "theory" that has not been accepted or subjected to peer review. On the contrary, the record reveals that Milner's proposed changes have been adopted and incorporated by various manufacturers over the last several years. True, the district court in *Peitzmeier* noted additionally that (1) the result that occurred with the tire-changing table top could happen on any flat surface, including the floor and (2) Milner is a metallurgist and not a mechanical engineer. While this Court might find these points persuasive, the Eighth Circuit did not choose to note them as reasons for affirming the district court in excluding Milner's testimony. Therefore, this Court feels restrained from doing so here.

It is, therefore, ORDERED that defendants' motion to exclude expert witness is denied.